**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: § <br> § <br> TREESAP FARMS, LLC, *et al.,* § <br> § <br> Debtors.[1] § <br> § <br> § | Chapter 11 <br><br> Case No. 25-90017 (ARP) <br><br> (Jointly Administered) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY
OF AN ORDER (I) APPROVING THE SETTLEMENT
BETWEEN (A) THE DEBTORS, (B) THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS, (C) HCR MOORPARK INVESTORS, LLC,
AND (D) CAPITAL FARM CREDIT, ACA; AND (II) GRANTING RELATED RELIEF**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 9:00 A.M. (PREVAILING CENTRAL TIME) ON JULY 8, 2025.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **A HEARING WILL BE CONDUCTED ON THIS MATTER ON JULY 8, 2025 AT 9:00 A.M. (PREVAILING CENTRAL TIME), IN COURTROOM 400, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002. YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917- 1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE PÉREZ'S CONFERENCE ROOM NUMBER IS 282694. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE**

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers are as follows: TreeSap Farms, LLC (5183); TSH Opco, LLC (4697); TSV Opco, LLC (5418); TSV Reco, LLC (4953); and TreeSap Florida, LLC (5331). The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is TreeSap Farms, LLC, 5151 Mitchelldale St. Suite B-2, Houston, TX 77292-5279.

> **GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE PÉREZ'S HOME PAGE. THE MEETING CODE IS "JUDGEPEREZ". CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**
>
> **HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE PÉREZ'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion"):

## Relief Requested

1. By this Motion, the Debtors seek entry of an order (the "Proposed Order"), substantially in the form attached hereto (a) approving the settlement (the "Settlement") memorialized in the settlement agreement attached as Exhibit 1 to the Proposed Order (the "Settlement Agreement") by and among the Debtors, the Official Committee of Unsecured Creditors (the "Committee"), HCR Moorpark Investors, LLC ("HCR"), and Capital Farm Credit, ACA, on behalf of itself and as the agent or nominee of the Prepetition Lenders, as defined in the Plan[2] ("CFC" and together with the Debtors, the Committee, and HCR, the "Parties"), and (b) granting related relief.

2. As set forth in more detail below, the proposed Settlement resolves the remaining open issues between the Committee, CFC and the Prepetition Lenders regarding challenge rights preserved by the Committee as well as open issues between CFC, the Prepetition Lenders, and HCR concerning distribution of the Sale Proceeds (defined herein) under the Plan. Importantly,

---

[2] Capitalized terms used but not defined herein have the meanings given to them in the *Joint Plan of Liquidation of TreeSap Farms, LLC and its Affiliated Debtors under Chapter 11 of the Bankruptcy Code* [Docket No 332] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan").

2

the Settlement does not alter the proposed treatment of general unsecured creditors under the Plan. Rather, it enhances the recovery to general unsecured creditors through a partial waiver of the Prepetition Lenders Deficiency Claim. Absent the Settlement, it is likely that the Committee and HCR would contest confirmation of the Plan leading to additional administrative expenses and delay. Accordingly, the Debtors submit that the Settlement should be approved as it will pave the way to an uncontested confirmation process and resolve the last open issues in these chapter 11 cases.

## Jurisdiction and Venue

3. The United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 6004, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 7041-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "Complex Case Procedures").

## Background

### I. Chapter 11 Cases

5. On February 24, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Bankruptcy Court commencing these chapter 11 cases. The factual background regarding the Debtors, including their business operations, their capital and debt structures, and

3

the events leading to the filing of these chapter 11 cases, is set forth in detail in the *Declaration of Jonathan A. Saperstein in Support of Chapter 11 Petitions and First Day Pleadings* and the *Declaration of Bret Jacobs in Support of Chapter 11 Petitions and First Day Pleadings* [Docket Nos. 14 and 15, respectively] (collectively, the "First Day Declarations"), which are fully incorporated herein by reference.

6. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108. No trustee or examiner has been requested in these chapter 11 cases.

7. These chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Local Rules 1015(b) and 1015-1, and the *Order (I) Directing Joint Administration of the Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 21] entered by the Bankruptcy Court on February 25, 2025.

8. On March 12, 2025, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed the Committee pursuant to section 1102 of the Bankruptcy Code. *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 82].

**II.    The Final DIP Order**

9. On March 26, 2025, the Bankruptcy Court entered the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, and (B) Use Cash Collateral; (II) Granting Senior Secured Priming Liens; (III) Granting Adequate protection to the Prepetition Lenders; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Docket No. 150] (the "Final DIP Order").[3]

---

[3] Capitalized terms used but not defined in this section II have the meaning given to them in the Final DIP Order.

4

10. As part of obtaining debtor-in-possession financing and through entry of the Final DIP Order, the Debtors stipulated, among other things, that CFC, the Prepetition Agent, on behalf of itself and as agent or nominee of the Prepetition Lenders, holds claims secured by legal, valid, perfected, binding, enforceable, and nonavoidable liens and security interests on all of the Collateral (as defined in the Final DIP Order) subject only to certain liens senior by operation of law or otherwise permitted by the Prepetition Loan Documents, solely to the extent any such permitted liens were, as of the Petition Date, valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Liens (the "Permitted Prior Liens"). *See* Final DIP Order, ¶ F.

11. These stipulations are subject to challenge by the Committee if it successfully sought standing to commence a challenge to the Debtors' stipulations and releases. *See* Final DIP Order, ¶ 34. The Challenge Period as provided for in the Final DIP Order has been extended by CFC throughout the negotiations of the Settlement. *See, e.g., Stipulation Regarding Extension of Committee's Challenge Period Under Final DIP Order* [Docket No. 346].

12. The Final DIP Order expressly reserved any rights, claims, or interests of HCR as a holder of an asserted Permitted Prior Lien, including any rights claims, or interests in the Collateral, as well as any claims, rights, or interests of the Parties under the Intercreditor and Subordination Agreement dated September 29, 2017, among the Prepetition Lenders, HCR, and certain of the Debtors (the "Intercreditor Agreement"). *See* Final DIP Order, ¶ 38.

**III.  The Debtors' Sale Process**

13. On March 3, 2025, the Debtors filed the *Debtors' Emergency Motion for Entry of Orders (I) Approving Bidding Procedures; (II) Authorizing the Debtors to (A) Select One or More Stalking Horse Bidders, and (B) to Offer Bid Protections to Such Stalking Horse Bidders; (III) Scheduling an Auction and a Sale Hearing; (IV) Approving the Form and Manner of Notice*

*Thereof; (V) Approving Assumption and Assignment Procedures for Executory Contracts and Unexpired Leases; and (VI) Granting Related Relief* [Docket No. 71] (the "Sale Motion").

14. On March 19, 2025, the Bankruptcy Court entered an order [Docket No. 122] (the "Bid Procedures Order") approving, among other things, the bidding procedures (the "Bid Procedures") governing the sale process for all or substantially all of the Debtors' assets. On April 9, 2025, the Debtors filed a *Notice of Filing of Debtors' Stalking Horse Designation* [Docket No. 185] (the "Stalking Horse Designation") designating TYFCO, LLC ("TYFCO") as the stalking horse bidder pursuant to the Bid Procedures. The Stalking Horse Designation attached a draft asset purchase agreement (as amended and revised, the "TYFCO APA"). The Debtors subsequently filed two amendments to the TYFCO APA. *See* Docket Nos. 214 and 242. Among other things, the TYFCO APA provides for the assumption of the Debtors' undisputed trade payable claims, whether arising prepetition or postpetition.

15. On May 12, 2025, the Bankruptcy Court entered the *Order Approving the Asset Purchase Agreement Between the Debtors and the Purchaser (II) Authorizing the Assumption and Assignment of the Assumed Contracts to the Purchaser; and (IV) Granting Related Relief* [Docket No. 282] (the "Sale Order").

16. The Sale Order finds that "in consideration for the benefits provided under the [TYFCO] APA, and other good and valuable consideration provided to the Debtors and their estates in connection with the Sale, upon the Closing, the APA shall constitute a good faith compromise and settlement of all Claims, Encumbrances, and Liabilities and controversies resolved pursuant to the APA, including the Debtors' release of the Saperstein Released Parties." *See* Sale Order at ¶Q.

17. The Sale Order further reserved any rights of HCR, including any rights against non-debtor parties and with respect to the sale proceeds under the waterfall provisions of the Intercreditor Agreement and as the holder of an asserted Permitted Prior Lien. Sale Order, at ¶ 33.

18. The Debtors closed the sale (the "Sale") of the TYFCO transaction on May 23, 2025. *See Notice of Closing the Sale to Purchaser* [Docket No. 314] and the Debtors have received the net proceeds from the Sale (the "Sale Proceeds").

**IV.   The Plan**

19. On May 9, 2029, the Debtors filed the Plan [Docket No. 274] and a related disclosure statement (the "Disclosure Statement").

20. The Plan provides, among other things, for a GUC Recovery Pool of $100,000 to be available to fund recoveries to Holders of General Unsecured Claims, which would include the Prepetition Lenders Deficiency Claim estimated to be not less than $119.7 million. The Plan does not waive or subordinate the Prepetition Lenders Deficiency Claim with respect to the GUC Recovery Pool, proceeds from any Retained Causes of Action, or otherwise with respect to any Holders of General Unsecured Claims.

21. On May 28, 2025, the Bankruptcy Court entered the *Order (I) Conditionally Approving Disclosure Statement, (II) Scheduling a Combined Hearing and Setting Deadlines Related Thereto, (III) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on Plan, (IV) Approving Manner and Form of Notice and Other Documents, and (V) Granting Related Relief* [Docket No. 326] (the "Solicitation Procedures Order"). Solicitation versions of the Plan and Disclosure Statement are filed at Docket Nos. 332 and 333, respectively. The Debtors have solicited the Plan and Disclosure Statement in accordance with the Solicitation Procedures Order and a combined hearing is scheduled for July 8, 2025, at 9:00 a.m. (prevailing Central Time) to

7

consider final approval of the Disclosure Statement and confirmation of the Plan (the "Combined Hearing").

## V. The Parties' Underlying Disputes

22. The Settlement is a global resolution of several disputes (the "Disputes") between the Parties related to the distribution of the Sale Proceeds pursuant to the Plan and Intercreditor Agreement as well as certain alleged challenge rights asserted by the Committee, with CFC, HCR, and the Committee each asserting that they (or their constituents in the case of the Committee) are entitled to a portion of the Sale Proceeds beyond what is currently contemplated in the Plan, as described below.

### 1. The Prepetition Lenders Claim

23. CFC and the Prepetition Lenders assert, and the Debtors have stipulated, that they are fully secured in all collateral and is accordingly entitled to all of the Debtors' Sale Proceeds based on its Prepetition Loan Agreement and Prepetition Security Documents, each as defined below. Specifically, effective as of July 30, 2021, TreeSap (as borrower) entered into that certain Amended and Restated Loan Agreement (as amended, supplemented, restated, replaced or otherwise modified from time to time, the "Prepetition Loan Agreement"), pursuant to which the Prepetition Lenders advanced and provided certain loans and financial accommodations to the Debtors (collectively, the "Prepetition Facilities"). CFC and the Prepetition Lenders assert that the aggregate principal amount outstanding under the Prepetition Facilities as of the Petition Date was not less than $188,168,247.00.

24. CFC and the Prepetition Lenders further assert that, pursuant to various security agreements, mortgages, deeds of trust, and Uniform Commercial Code and financing statement filings (collectively, the "Prepetition Security Documents", and together with the Prepetition Loan Agreement, various promissory notes delivered thereunder (collectively, the "Prepetition Notes"),

8

and any other agreement associated therewith, the "Prepetition Loan Documents"), the obligations owing under the Prepetition Facilities (the "Prepetition Obligations") are secured by validly-existing and duly-perfected first-priority liens and security interests in and upon substantially all of the real and personal property assets of TreeSap and the Debtor guarantors (collectively, the "Prepetition Collateral").

25. As described below, HCR and the Committee dispute that CFC and the Prepetition Lenders are secured in the entirety of the Prepetition Collateral or otherwise are entitled to all of the Sale Proceeds.

### 2. HCR's Claim

26. HCR filed proofs of claim against the TreeSap Farms, LLC, TSV Reco, LLC and TSV Opco, LLC Debtors in an amount no less than $12.6 million and asserted such claims as secured claims based on a recorded abstract of judgment, deeds of trust and fixture filings, and UCC filings, all of which, HCR asserts, constituted Permitted Prior Liens under the Final DIP Order (the "HCR Claims"). HCR asserts that it is fully secured in certain collateral and is entitled to Sale Proceeds in the amount of the HCR Claims based on its asserted Permitted Prior Liens and rights under the Intercreditor Agreement. The Debtors, CFC and the Prepetition Lenders dispute these assertions.

27. HCR's Claims against Debtors TSV Reco, LLC and TSV Opco, LLC arise out of a certain (i) Forbearance Agreement and Release dated February 29, 2017 (the "HCR Forbearance Agreement"), and (ii) Assumption Agreement dated September 29, 2017 (the "HCR Assumption Agreement", and together with the HCR Forbearance Agreement, the "HCR Agreements"). The HCR Agreements obligate TSV Reco and TSV Opco to pay HCR the original principal sum of $18,875,000 on account of a judgment in favor of HCR against Village Nurseries, TSV Reco's predecessor in title to the Debtors' Southwest Division owned real property (the "TSV Reco Real

9

Property"), and further granted HCR security interests in all real and personal property held by TSV Reco, LLC and TSV Opco, LLC. Specifically, in September 2017, TSV Reco purchased the TSV Reco Real Property from Village Nurseries subject to HCR's judgment lien against the property. At the time of TSV Reco's acquisition of the TSV Reco Real Property, the property was subject to a judgment lien in favor of HCR due to that certain Abstract of Judgment that was recorded in the real property records of: (i) Riverside County, California, (ii) Orange County, California, and (iii) San Diego County, California (such counties identified in (i)-(iii), collectively, the "California Counties"). TreeSap Farms, LLC guaranteed all obligations under the HCR Agreements under that General Continuing Guarantee, dated September 29, 2107.

28. HCR asserts liens and security interests against the TSV Reco Real Property to secure the alleged obligations of TSV Reco and TSV Opco under the HCR Agreements pursuant to certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing documents that have been filed of record in the Official Records of the California Counties. HCR asserts that its recordings, including the prior judgment lien, were duly recorded prior to the recording of any security interests granted in favor of CFC and accordingly constitute Permitted Prior Liens under the Final DIP Order.

29. On September 29, 2017, HCR entered into that certain Intercreditor and Subordination Agreement dated September 29, 2017 (the "Intercreditor Agreement"), between the Prepetition Lenders and HCR.

30. HCR asserts that it is entitled to some portion of the Debtors' Sale Proceeds and disputes that the entirety of its claim constitutes a General Unsecured Claim that is subordinated to the entirety of the claims and liens of the Prepetition Lenders and CFC under the Intercreditor Agreement. HCR also believes it has breach of contract claims and tort claims against the

Prepetition Lenders that would entitle it to recover from the Sale Proceeds. HCR further disputes the ability of the Debtors, the Plan Administrator, or the Post-Effective Date Debtors to enforce any waterfall or other rights of HCR or the Prepetition Lenders under the Intercreditor Agreement, as set forth in Article V.C of the Plan, or otherwise adjudicate or impair any direct claims of HCR against the Prepetition Lenders. HCR further contends that any claims or disputes between HCR and the Prepetition Lenders, including any disputes regarding the waterfall provision and rights to proceeds from collateral under the Intercreditor Agreement, constitute claims by and between non-debtor parties that are not within the Bankruptcy Court's jurisdiction.

31. The Debtors, CFC, the Prepetition Lenders and the Committee dispute that HCR is secured in any collateral or entitled to priority in recovery from the Sale Proceeds, or that CFC or the Prepetition Lenders are otherwise liable to HCR under the Intercreditor Agreement or applicable law. More specifically, CFC and the Prepetition Lenders assert that HCR is not entitled to any recovery because, pursuant to the Intercreditor Agreement, HCR expressly subordinated any liens it may hold on "Common Collateral" (as defined in the Intercreditor Agreement) to any liens in favor of the Prepetition Lenders.

### 3. The Committee's Investigation and Challenge Claims

32. The Committee has identified certain assets included in the Sale that the Committee believes are not encumbered by validly perfected liens of CFC and the Prepetition Lenders and, therefore, would be unencumbered assets. As a result, the Committee asserts that some portion of the Sale Proceeds attributable to these unencumbered assets should be distributed to Holders of Allowed General Unsecured Claims, in accordance with the terms of the Plan, rather than retained by CFC and the Prepetition Lenders.

33. Specifically, the Committee undertook an investigation and asserts that CFC and the Prepetition Lenders did not have a validly perfected lien on certain assets, including titled

vehicles and causes of action that were released or acquired by TYFCO as part of the Sale. As a result, the Committee asserts that the Sale Proceeds from these assets should be distributed to the Holders of Allowed General Unsecured Claims pursuant to the terms of the Plan. The Committee has prepared a standing motion and proposed complaint and is prepared to seek standing to assert such claims if the Settlement is not approved.

34. CFC, the Prepetition Lenders and HCR dispute that the Sale Proceeds are unencumbered and available for distributions to general unsecured creditors.

### The Settlement

35. While each of the Parties is confident in their respective positions, each also recognizes the various risks, costs, and uncertainties associated with litigating the above-described claims and issues. The Parties have accordingly engaged in good faith, arm's-length discussions with respect to the Disputes. Those discussions resulted in the terms of a settlement, which is memorialized in the Settlement Agreement. Subject to the Bankruptcy Court's approval, the Settlement Agreement provides for the global resolution of the Disputes.

36. In relevant part, the principal terms of the Settlement are as follows:

- CFC and the Prepetition Lenders shall contribute $425,000 from the Sale Proceeds (the "Settlement Amount") with the funds receiving the following treatment under the Plan:

    o Of the Settlement Amount, $325,000 will be paid to HCR on or as soon as reasonably practicable after the Plan's Effective Date on account of its claims and credited against HCR's Allowed General Unsecured Claim.

    o Of the Settlement Amount, $100,000 will be paid into the "GUC Recovery Pool Escrow Account" as defined in the Plan for the distribution to Holders of Allowed Class 4 General Unsecured Claims in accordance with the terms of the Plan, including Article III.B.4 thereof.

- CFC, for itself and on behalf of the Prepetition Lenders, waive their Prepetition Lenders Deficiency Claim only with respect to the entirety of

12

- the Settlement Amount, including all funds transferred to the GUC Recovery Pool Escrow Account.

- The Debtors waive and release any and all claims that their Estates may hold against HCR.

- The Debtors waive and release any and all claims that their Estates may hold against the Prepetition Lenders and CFC.

- CFC, for itself and on behalf of the Prepetition Lenders, waives and releases any and all claims that they may hold against HCR.

- HCR waives and releases any and all claims that it may hold against the Prepetition Lenders and CFC.

- The Debtors stipulate and agree to the allowance of a $12.6 million Class 4 General Unsecured Claim for HCR, which, for the avoidance of doubt, is entitled to further distributions from the $100,000 "GUC Recovery Pool Escrow Account" under the terms of the Plan. HCR shall have no other claims against the Debtors, their Estates, the Prepetition Lenders, or CFC and, with respect to such entities, shall only be entitled to a recovery on its allowed claims from the Settlement Amount as set forth herein.

- The Debtors stipulate and agree that CFC and the Prepetition Lenders hold a Prepetition Lenders Deficiency Claim in an amount of not less than $119.7 million.

**Basis for Relief**

**I.    The Settlement is Fair, Reasonable, and in the Best Interest of the Debtors' Estates.**

37.    Bankruptcy Rule 9019(a) authorizes bankruptcy courts to approve compromises that are "fair and equitable and in the best interest of the estate." *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 355 (5th Cir. 1997) (internal quotation marks omitted); *see* Fed. R. Bankr. P. 9019(a). Courts consider the following factors when evaluating a compromise: (a) the probability of success in the litigation, with due consideration for uncertainty in fact and law; (b) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and (c) all other factors bearing on the wisdom of the compromise. *See Cajun Electric*, 119 F.3d at 356 (citations omitted).

38. The decision to approve a compromise is within the Bankruptcy Court's discretion and the Bankruptcy Court need not "conduct a mini-trial to determine the probable outcome of any claims waived in the settlement." *Cajun Electric*, 119 F.3d at 355. The compromise need only fall "within the range of reasonable litigation alternative." *In re Derosa-Grund*, 567 B.R. 773, 785 (Bankr. S.D. Tex. 2017) (internal quotation marks omitted); *see also In re ASARCO LLC*, No. 05-21207, 2009 WL 8176641, at *9 (Bankr. S.D. Tex. June 5, 2009). The Bankruptcy Court "is not to decide the numerous questions of law and fact raised" by the compromise, but, instead, is "to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Ars Brook, LLC v. Jalbert (In re ServiSense.com, Inc.)*, 382 F.3d 68, 72 (1st Cir. 2004) (citations omitted); *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

39. Each of the three factors outlined above counsels in favor of approving the Settlement.

40. *Probability of Success on the Merits*:  While the Debtors are confident in their positions, they recognize that each of the Parties believe that they have meritorious claims and defenses related to the Disputes. Approval of the proposed Settlement involves less risk and will result in an expedient final and certain resolution of the Disputes – thereby significantly reducing the costs and time associated with litigating the merits of the Disputes to be incurred by the Debtors and their Estates. Indeed, if the Disputes are not settled pursuant to the Settlement Agreement, the Parties may be forced to engage in protracted litigation involving additional discovery and contested hearings, resulting in the accumulation of additional administrative expense. Each party bears risk on the ultimate outcome. The Debtors believe that the Settlement, as memorialized in the Settlement Agreement, strikes the appropriate risk-reward balance.

41.     *Complexity, Expense, and Likely Duration*.  The Parties agree that litigating the Disputes is a heavily fact-intensive exercise, unlikely to be resolved at the summary judgment stage, and therefore litigating the nature of these disputes makes little sense under the circumstances.  If the Bankruptcy Court grants this Motion, the Settlement would avoid the costs and disruption associated with discovery, dispositive motions practice, trial, and other activities that would accompany any attendant litigation.

42.     Accordingly, the Debtors submit that, absent approval of the Settlement, final adjudication of the Disputes would be complex, expensive, and would likely delay confirmation of the Plan and conclusion of these cases.

43.     *All Other Factors*.  The Parties engaged in extensive, good-faith negotiations that resulted in the Settlement.  Moreover, the Settlement provides a global resolution that will facilitate confirmation of a consensual Plan all while ensuring that the Debtors' Estates are not saddled with expensive litigation.

44.     It is important to note that the Settlement is appropriate within the context of these chapter 11 cases.  As noted above, as part of the Sale and in accordance with the terms of the TYFCO APA, the Buyer assumed all undisputed trade payables of the Debtors, whether prepetition or postpetition.  The Buyer also retained all employees and assumed certain obligations related to employees.  As a result of these terms, the Debtors believe that, upon completion of the claims resolution process, the only significant remaining general unsecured claims against the Estates will be the Prepetition Lenders Deficiency Claim and the claim of HCR, both of whom support the proposed Settlement.

45.     In addition, part of the Settlement requires the Debtors to allow HCR's claim and release any claims against HCR.  The Debtor generally does not dispute that HCR is owed

15

approximately $12.6 million. The Debtors have investigated potential claims against HCR and believe that they may have valid claims to avoid certain payments as preferential transfers. However, HCR has disputed such payments are avoidable and believes there are available statutory defenses. That being said, with the waiver of the Prepetition Lenders Deficiency Claim only with respect to the Settlement Amount as part of the Settlement, and given it is expected that there will not be any other General Unsecured Claims upon completion of the claims resolution process (or such claims will be *de minimis*), the Debtors believe any recovery ultimately received from HCR on account of claims against HCR would ultimately be distributed to HCR and the Prepetition Lenders, both of who support the release.

46. Further, the Settlement does not impact or alter the rights of general unsecured creditors under the Debtors' proposed Plan and, in fact, enhances their recovery. The GUC Recovery Pool under the Plan is $100,000, and will remain the same as a result of the Settlement, with the added benefit of the Prepetition Lenders waiving Prepetition Lenders Deficiency Claim only with respect to the Settlement Amount, which includes the $100,000 in the GUC Recovery Pool. The Prepetition Lenders were unwilling to waive this portion of the Prepetition Lenders Deficiency Claim without a global resolution of the alleged challenge rights of the Committee and alleged claims held by HCR to Sale Proceeds. As such, general unsecured creditors stand to receive a greater recovery now that the GUC Recovery Pool does not have to be shared with the Prepetition Lenders Deficiency Claim.

47. For these reasons, the Debtors, in consultation with their counsel, have concluded that the Settlement is fair and reasonable and in the best interest of all affected parties.

**II.     The Debtors' Entry into the Settlement Is a Reasonable Exercise of the Debtors' Sound Business Judgment.**

48.     Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing.  It is well-established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business under this provision if there is a good business reason for doing so.  *See, e.g.*, *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.3d 1223, 1226 (5th Cir. 1986)); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005); *In re Houston LLC*, 578 B.R. 600, 611 (Bankr. S.D. Tex. 2017).  The Fifth Circuit has held that this business judgement standard is flexible and encourages Debtors to use their discretion when making business decisions.  *See ASARCO*, 650 F.3d at 601.

49.     Here, the Debtors' entry into the Settlement represents a valid exercise of the Debtors' business judgment and should be approved.  Pursuant to the Settlement, the Parties will effectuate a global resolution of the Disputes, thereby paving the way for confirmation of the Plan on a consensual basis without impacting the rights of any party under the Plan that is not a Party to the Settlement.  The proposed Settlement allows the Debtors to avoid the expenses and uncertainty associated with prolonged litigation at a crucial point in these chapter 11 cases.

50.     For the foregoing reasons, the Debtors submit that the Settlement should be approved under the applicable legal standards.

17

**Emergency Consideration**

44.     The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Local Rule 9013-1(i) and the Complex Case Procedures.  The Debtors believe that the relief sought herein should be considered by the Bankruptcy Court on an emergency basis, and at the Combined Hearing simultaneously with Plan confirmation, because the Settlement contemplated in this Motion seeks to resolve the above-described Disputes among the Parties – the resolution of which directly impacts the distributions and treatment of the Parties' claims, as applicable, under the Plan.  Accordingly, the Debtors believe that emergency consideration is necessary and respectfully request that this Motion be heard on an emergency basis at the Combined Hearing.

**Waiver of Bankruptcy Rule 6004(a) and (h)**

45.     Additionally, with respect to any aspect of the relief sought herein that constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a), to the extent not otherwise satisfied, and of the fourteen-day stay under Bankruptcy Rule 6004(h).  As described above, the relief that the Debtors seek in this Motion is immediately necessary for the Debtors to confirm their Plan within the time frame set forth in the Solicitation Procedures Order.  The Debtors thus submit that the requested waiver of the notice requirements of Bankruptcy Rule 6004(a) and of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is appropriate, as the exigent nature of the relief sought herein justifies immediate unstayed relief.

**Notice**

46.     Notice of this Motion will be provided to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to HCR; (d) counsel to CFC; (e) the state attorneys general for states in which the Debtors conduct business; (g) the

Internal Revenue Service; (h) all government entities that may hold claims against the Debtors; and (i) any party identified in section E of the *Procedures for Complex Cases in the Southern District of Texas* (collectively, the "Notice Parties"). A copy of this Motion will also be made available on the Debtors' case information website located at https://www.donlinrecano.com/Clients/tsf/Dockets. Based on the circumstances surrounding this Motion and the nature of the relief requested, the Debtors respectfully submit that no other or further notice is required. The Debtors will be filing a separate motion contemporaneously with this Motion requesting entry of an order authorizing limited service based on the circumstances surrounding this Motion.

  WHEREFORE, the Debtors respectfully request that the Bankruptcy Court approve the Proposed Order, substantially in the form annexed hereto and grant the relief requested herein along with such other and further relief as the Bankruptcy Court deems appropriate under the circumstances.

*[Remainder of Page Left Blank Intentionally]*

Dated: July 1, 2025  
       Houston, Texas

Respectfully submitted,

*/s/ Timothy A. ("Tad") Davidson II*
**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II
(Texas Bar No. 24012503)
Joseph P. Rovira
(Texas Bar No. 24066008)
Catherine A. Rankin
(Texas Bar No. 24109810)
Brandon Bell
(Texas Bar No. 24127019)
600 Travis Street, Suite 4200
Houston, Texas 77002
Telephone:  (713) 220-4200
Facsimile:  (713) 220-4285
E-mail:  taddavidson@Hunton.com
         josephrovira@Hunton.com
         catherinerankin@Hunton.com
         bbell@Hunton.com

*Counsel to the Debtors and Debtors in Possession*

### Certificate of Service

I certify that on July 1, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

*/s/ Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II